749 So.2d 215 (1999)
James Norman COFFIELD, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01165-COA.
Court of Appeals of Mississippi.
August 3, 1999.
*216 Leslie D. Roussell, Laurel, Attorney for Appellant.
Office of the Attorney General by Dewitt T. Allred, III, Attorney for Appellee.
BEFORE McMILLIN, C.J., DIAZ, AND LEE, JJ.
McMILLIN, C.J., for the Court:
¶ 1. James Coffield appeals his conviction of the crime of murder. He was convicted by a Covington County Circuit Court jury of the stabbing death of his estranged wife, Lana Hedley Coffield. Coffield raises three issues on appeal. We find the issues presented to us for consideration to be without merit and, therefore, we affirm Coffield's conviction and subsequent judgment of sentence.

I.

Facts
¶ 2. Witnesses presented by the State established that, on October 4, 1995, Coffield confronted his wife, from whom he was separated, as she left the United States Post Office in the town of Mount Olive. Three eyewitnesses testified to seeing Coffield stab his victim. Coffield was arrested on the spot and the knife, described as a steak knife, used to injure Lana Coffield was recovered. The State also presented expert medical testimony confirming that Lana Coffield's death was attributable to trauma associated with her stabbing injuries.
¶ 3. The defendant testified as the sole witness for the defense. He claimed that he and his wife's separation was due to interference from his wife's sister and that he and his wife continued to enjoy a good relationship, though they were forced, to keep it a secret. He claimed that he only confronted his wife at the post office in order to persuade her to carry him to his job so that he would not have to walk the required ten miles, but that she refused because of fear that her sister would find out. He claims to have admonished his wife at that point that she should not permit her sister to control her life and that he has no memory of events that transpired thereafter. He neither admitted nor denied actually stabbing his wife, but only expressed the hope that he had not done so.
¶ 4. The jury returned a verdict of guilty of murder. Coffield's post-trial motion for JNOV or, alternatively, a new trial was denied. Coffield subsequently perfected this appeal, raising the three issues we now consider.

II.

The First Issue: Defective Indictment
¶ 5. For the first time on appeal, Coffield asserts that the indictment was fatally defective for its failure to charge *217 that the victim, Lana Coffield, was a human being. He cites the language of Section 97-3-19 of the Mississippi Code that defines murder as "[t]he killing of a human being without authority of law ... [w]hen done with deliberate design to effect the death of the person killed...." Miss.Code Ann. § 97-3-19(1)(a) (emphasis supplied).
¶ 6. Coffield cites no Mississippi authority for the proposition that an allegation that the deceased victim was a human being is an essential element of the indictment. Other jurisdictions considering the same issue appear to have universally rejected it. See, e.g., Lee v. State, 115 Fla. 30, 155 So. 123, 124 (1934) (overruling motion to quash indictment for failure to allege specifically-named victim was human being was proper); State v. Montgomery, 16 Wash.2d 130, 132 P.2d 720, 721 (1943) ("the use of an ordinary given name and surname raised the presumption that `human being' was meant"); State v. Hachey, 278 A.2d 397, 398 (Maine 1971) (stating use of common sense dictated that reference in murder indictment to `one Harold E. Buzzell' meant a human being).
¶ 7. We find these authorities persuasive and are unconvinced of the merits of Coffield's argument. The purpose of an indictment is to "fully notify the defendant of the nature and cause of the accusation" against him. URCCC 7.06. While a defendant is entitled to a reasonable measure of certainty in knowing those factual allegations the State intends to rely upon to establish his guilt, we are satisfied that an indictment naming a particular individual by name and surname carries with it the necessary, even if unspoken, implication that the individual named was a human being. Other Mississippi statutes defining crimes against the person go so far as to omit any specific requirement that the victim be a human being. Various assaults are defined as causing or attempting to cause injury "to another." Miss.Code Ann. § 97-3-7 (Supp.1998). Robbery is defined as the taking of "the personal property of another...." Miss.Code Ann. § 97-3-73 (Rev.1994). We are satisfied that the statutes, by necessary implication, refer to injuries or takings from other human beings, but we are equally satisfied that the State is not required, as a critical element of these crimes, to either charge or to put on affirmative proof, beyond the specific identity of the victim, that the victim was a human being. We find this issue to be without merit.

III.

The Second Issue: The Sufficiency of the Evidence of Guilt
¶ 8. Coffield urges that the State's evidence was deficient because of the prosecution's failure to put on evidence that he killed his wife by "by deliberate design," that being one of the essential elements of murder. Miss.Code Ann. § 97-3-19(1)(a) (Supp.1998). Coffield points out that he procedurally preserved the error at every critical point, moving for a directed verdict at the end of the State's proof, again at the end of all the evidence, and by timely filing a JNOV motion. Bingham v. State, 723 So.2d 1193(¶ 6) (Miss.Ct.App.1998).
¶ 9. While we agree that the issue is procedurally preserved for our review, we are not satisfied that Coffield's claim has merit. In reviewing any challenge to the sufficiency of the evidence of guilt in a criminal trial, the appellate court is obligated to view the evidence in the light most favorable to upholding the verdict. Norman v. State, 725 So.2d 247(¶ 14) (Miss.Ct.App.1998). We ought to intercede only in those instances where, upon viewing the evidence in that light, we are convinced that a reasonable juror considering all the evidence could, because of the deficiency of the State's proof as to one or more of the critical elements of the crime, only find the defendant not guilty. Flowers v. State, 726 So.2d 185(¶ 8) (Miss.Ct. App.1998).
¶ 10. The Mississippi Supreme Court has observed that evidence of premeditation, *218 as contemplated by the phrase "deliberate design" in our present murder statute, is often not capable of direct proof. See e.g., Higgins v. State, 725 So.2d 220 (¶ 26) (Miss.1998)(stating malice may be inferred from use of a deadly weapon); Strong v. State, 600 So.2d 199, 202 (Miss.1992)(finding reasonable inferences that flow from facts of killing established "deliberate design"); Porter v. State, 57 Miss. 300, 302 (1879)(stating proof by circumstances is often the only proof accessible and is "frequently of the highest credibility"). It is, thus, entirely proper that "deliberate design" be proven by the inferences reasonably drawn from the objective facts of the incident itself. Id.
¶ 11. Further, the court has noted that the design to kill another need not be of any particular duration, so long as there is evidence that the defendant formed the requisite intent to purposely kill another in advance of the actual killing. Graham v. State, 582 So.2d 1014, 1018 (Miss.1991); Hudson v. State, 185 Miss. 677, 685-86, 188 So. 561, 562-63 (1939). Therefore, it was not necessary for the State to prove that Coffield went to the post office with the purposeful design to stab his wife to death. His intent may well have been finally formed only during the course of his conversation with her when she repeatedly resisted his efforts to persuade her to drive him to work. There is nothing in the record to indicate that the victim did anything to provoke Coffield's passions or to cause him to attack her in self-defense. Instead, viewed in its best light from the State's view, there was substantial evidence that Coffield, at some point, formed an intention to violently attack his estranged wife with a steak knife and to repeatedly stab her with the knife until he had inflicted one or more mortal wounds to her body. Assuming the jury believed, as it reasonably could, that Coffield's actions in inflicting numerous stab wounds to his victim were done purposefully, we are satisfied that the jury was entitled to conclude that Coffield had formed the requisite "deliberate design" to end his wife's life that constitutes a necessary element of the crime of murder. Miss.Code Ann. § 97-3-19(1)(a)(Supp.1998).

IV.

The Third Issue: Reversible Error for Shackling the Defendant
¶ 12. This trial was actually Coffield's second time to face trial on these charges. An earlier trial had ended in a mistrial when Coffield produced a metal razor-like tool in the courtroom and began to try to cut his wrists before the jury. Prior to the second trial beginning, the State moved to have Coffield restrained during trial to prevent a repeat of that incident or some other incident that would interrupt the trial and give rise to the necessity for a mistrial. At the pre-trial hearing on the motion, the State produced evidence that Coffield had indicated, after the earlier mistrial, that he could have injured any member of the jury in the courtroom had he been so inclined. Based on the previous trial occurrence and evidence of Coffield's statement, the trial court granted the State's motion; however, the court specifically attempted to minimize the impact of the restraint by having the restraints put into place outside the jury's presence each time and then having the presence of the restraints concealed by a long-sleeve shirt.
¶ 13. Coffield cites cases that suggest that permitting the jury to see the defendant bound and shackled improperly encroaches on the defendant's presumption of innocence. See, e.g., Hickson v. State, 472 So.2d 379, 383 (Miss.1985); Rush v. State, 301 So.2d 297, 300 (Miss.1974); Nevertheless, the law is clear that there is not an unqualified right to appear unrestrained before the jury, but that, in the proper case, to protect the safety of those in the courtroom, to deprive a flight-prone defendant of the opportunity to flee, or to preserve an orderly trial from a purposely *219 disruptive defendant, a defendant may be shackled. Id. Coffield points out that, quite properly, the restraining procedures ought to be at the minimum level that will address the concern before the court. See Brown v. State, 690 So.2d 276, 286-87 (Miss.1996) (involving judge allowing defendant to be held in waist restraints during court proceedings which were not visible to jury, but seen as necessary where defendant was very large man and prone to start fights). However, he does not suggest in what way the trial court violated that principle in this instance. A defendant capable of disrupting his own trial by actual or feigned suicide attempts and who is heard to comment on his ability to inflict injury on members of the jury may, in our view, be restrained to the extent necessary to see, with some measure of certainty, that he can accomplish neither aim. We conclude that the trial court's decision as to the degree of restraint imposed and the effort made to minimize the impact of that restraint on the jury's views of the defendant during the course of the trial were a reasoned and proper exercise of the discretion given to the trial court in such matters. For that reason, we find Coffield's final issue to be without merit.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF COVINGTON COUNTY OF CONVICTION OF MURDER AND SENTENCE TO SERVE A TERM OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COVINGTON COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.